No. 15-80053

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

AGUA CALIENTE BAND OF CAHUILLA INDIANS,

*Plaintiff-Respondent*

and

UNITED STATES OF AMERICA,

*Intervenor-Plaintiff-Respondent*

v.

COACHELLA VALLEY WATER DISTRICT
and DESERT WATER AGENCY, et al.

*Defendants-Petitioners*

_____

**RESPONSE IN OPPOSITION TO PETITION
FOR PERMISSION TO APPEAL**

_____

United States District Court for the Central District of California
Hon. Jesus G. Bernal
_____

Of Counsel:

SCOTT BERGSTROM
CHRISTOPHER WATSON
Office of the Solicitor
U.S. Department of the Interior
Washington, D.C. 20240

WILLIAM B. LAZARUS
JOHN L. SMELTZER
PATRICK BARRY
DARON T. CARREIRO
YOSEF M. NEGOSE
ELIZABETH ANN PETERSON
Attorneys
U.S. Department of Justice
P.O. Box 7415
Washington, D.C. 20044
(202) 514-3888

# TABLE OF CONTENTS

Page

INTRODUCTION

I.    Background

    A.    The *Winters* doctrine and federal reserved water rights ............4

    B.    The Agua Caliente Reservation ...................................................5

    C.    The proceedings in the district court..........................................6

II.    Argument.................................................................................................6

    A.    Federal reserved water rights are governed by federal, not state, law ................................................................................................6

    B.    Binding precedent in this Court holds that appurtenant groundwater necessary to a federal reservation of land is impliedly reserved......................................................................9

    C.    There is no substantial conflict among the courts as to whether federal reserved water rights extend to groundwater..12

        1.    *Federal courts uniformly recognize that federal reserved water rights include the right to use groundwater* .........12

        2.    *The state courts generally recognize that groundwater is reserved where it is necessary to effectuate a federal reservation of land* ..........................................................13

        3.    *The State of California recognizes federally reserved water rights groundwater* ................................................17

CONCLUSION ........................................................................................

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases:**

*Arizona v. California*,
373 U.S. 546 (1963) .................................................................. 5, 6

*Arizona v. San Carlos Apache Tribe of Ariz.*,
463 U.S. 545 (1983) ........................................................ 4

*Cal. Or. Power Co. v. Beaver Portland Cement Co.*,
295 U.S. 142 (1935) ........................................................ 4

*Cappaert v. United States*,
426 U.S. 128 (1976) .................................................. 5, 7, 10, 11

*Colville Confederated Tribes v. Walton*,
460 F. Supp. 1320 (E.D. Wash. 1978) ...................................... 13

*Colville Confederated Tribes v. Walton*,
647 F.2d 42 (9th Cir. 1981) ................................................. 7, 8

*Colville Confederated Tribes v. Walton*,
752 F.2d 397 (9th Cir. 1985) .................................................. 14

*Confederated Salish & Kootenai Tribes of the Flathead Reservation v. Stults*,
59 P.3d 1093 (Mont. 2002) ...................................................... 17

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ................................................ 2, 3

*Gila River Pima-Maricopa Indian Cmty. v. United States*,
9 Ct. Cl. 660 (1986) ................................................................ 13

*Gomez v. Campbell-Ewald Co.*,
768 F.3d 871 (9th Cir. 2014) ................................................... 11

*In re All Rights to Use Water in the Big Horn River System*,
753 P.2d 76 (Wyo. 1988), *cert denied*, 488 U.S. 1040 (1989)...............14, 15

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1982) ....................................................... 2

*In re General Adjudication of All Rights to Use Water in the Gila River*
   *System and Source*, 989 P.2d 739 (Ariz. 1999)...................................... 16, 17

*John v. United States*,
   720 F.3d 1214 (9th Cir. 2013) ....................................................... 9

*Mastro v. Rigby*,
   764 F.3d 1090 (9th Cir. 2014) ....................................................... 11

*Miller v. Gammie*,
   335 F.3d 889 (9th Cir. 2003) (en banc) ....................................................... 11

*Nevada v. United States*,
   463 U.S. 110 (1983) ....................................................... 5

*Nevada ex rel. Shamberger v. United States*, 165 F.Supp. 600 (D.Nev.1958),
   *aff'd on other grounds*, 279 F.2d 699 (9th Cir. 1960) ...................................12

*New Mexico v. Aamodt*,
   618 F. Supp. 993 (D.N.M. 1985) ....................................................... 13

*Reese v. BP Exploration Inc.*,
   643 F.3d 681 (9th Cir. 2011) ....................................................... 2

*Soboba Band of Mission Indians v. United States*,
   37 Ind. Cl. Comm. 326 (1976)...................................................13

*State of New Mexico ex. rel. Reynolds v. Aamodt*,
   618 F. Supp. 993 (D.N.M. 1985)...................................................13

*Tweedy v. Tex. Co.*,
   286 F. Supp. 383 (D. Mont. 1968) ........................................................... 12

*U.S. Rubber Co. v. Wright*,
   359 F.2d 784 (9th Cir. 1966) ....................................................... 3

*United States v. Adair*,
    723 F.2d 1394 (9th Cir. 1983) ....................................................... 8

*United States v. Cappaert*,
    508 F.2d 313 (9th Cir. 1974) ................................................... 9, 10

*United States v. New Mexico*,
    438 U.S. 696 (1978) ...................................................................... 8

*Winters v. United States*,
    207 U.S. 564 (1908) ................................................................... 4, 7

*Wyoming v. U.*S.,
    WL 1094117 (N0. 88-309) (Aug. 18, 1988) ............................... 15

## STATUTES:

28 U.S.C. § 1292(b) (2012) ................................................... 1, 2, 13, 18

28 U.S.C. § 10720.3(d) (2012) ............................................... 18

## RULES and REGULATIONS:

Fed. R. App. P. 32(A) ......................................................... 20
Fed. R. App. P. 32(a)(6) ...................................................... 20
Fed. R. App. P. 5(c) ........................................................... 20

## MISCELLANEOUS:

Kappler, Indian Affairs: Laws and Treaties, vol. 1, 821 ......................................... 5

Kappler, Indian Affairs: Laws and Treaties, vol. 1, 822 ......................................... 5

W. Canby, American Indian Law 245–46 (1981) ...................................... 8

# INTRODUCTION

In this case, the Agua Caliente Band of Cahuilla Indians ("Tribe") sued two water distribution authorities, Coachella Valley Water District and Desert Water Agency ("the Water Agencies"), alleging that the Water Agencies' pumping of water from an aquifer underlying the Tribe's reservation is causing injury to the groundwater and infringing on the Tribe's exercise its federally reserved water rights. The Tribe seeks declaratory and injunctive relief to protect its right to use water necessary to satisfy the present and future needs of the Tribe and its members residing on the reservation.

The Water Agencies seek this Court's permission, under 28 U.S.C. 1292(b), to appeal the district court's interlocutory order, which the district court *sua sponte* certified for interlocutory appeal. The order, among other things, held that the Tribe's federal reserved water rights include rights in appurtenant groundwater. But interlocutory appeal under § 1292(b) is reserved for extraordinary circumstances plainly not present here. The Water Agencies incorrectly contend that interlocutory appeal is appropriate because the question whether federal reserved water rights may include rights in appurtenant groundwater is a controlling question of law as to which a substantial ground exists for difference of opinion, and that its immediate resolution will materially advance the termination of the litigation. While that issue does present a controlling question of law, there

is no substantial ground for difference of opinion as to that question, and its resolution by this Court at this time therefore would improperly prolong the litigation.

The Water Agencies seek relief under the "narrow exception to the final judgment rule embodied in 28 U.S.C. § 1292(b)," (see *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)), which provides that "[a] non-final order may be certified for interlocutory appeal where it 'involves a controlling question of law as to which there is substantial ground for difference of opinion' and where 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 687–88 (9th Cir. 2011) (quoting 28 U.S.C. § 1292(b)). Because the requirements of § 1292(b) are jurisdictional, if this appeal does not present circumstances satisfying the statutory prerequisites for granting certification, this court cannot allow the appeal. *Couch*, 611 F.3d at 633, citing *Union County v. Piper Jaffray & Co.*, 525 F.3d 643, 645–46 (8th Cir. 2008) (internal quotation marks omitted). This Court accordingly "must determine whether the district court properly found that the certification requirements of the statute have been met," *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982). The Water Agencies bear the burden of so demonstrating. *Couch*, 611 F.3d at 633. They have failed to do so.

2

The United States does not contest the Water Agencies' characterization of the groundwater issue as a controlling question of law. But there is no substantial ground for difference of opinion as to its resolution. The district court incorrectly concluded that no circuit court has passed on the issue; and this Court's rulings and those of the other federal courts that have addressed the question uniformly hold that the water necessary to effectuate the purposes of an Indian reservation is reserved, that the reservation is governed by federal law, and that the reserved water right is not limited to surface waters. Neither a party's strong disagreement with the Court's ruling, nor "that settled law might be applied differently" is sufficient to establish a "substantial ground for difference." *Couch, id.* Section 1292(b) is "to be used only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation, and "was not intended merely to provide review of difficult rulings in hard cases." *United States Rubber Co. v. Wright* 359 F.2d 784, 785 (9th Cir. 1966).

Nor can the Water Agencies show that the "split" between among state supreme court opinions observed by the district court amounts to a "substantial ground." The State courts are not in substantial dispute as to the existence of federal reserved water rights in groundwater, and the State of California has recently enacted legislation clarifying that it recognizes federal reserved water rights in groundwater. And because a federal reserved water right is defined by the

need for water and not by the source from which it could be produced, there is no principled ground for a determination that federal reserved water rights do not exist in groundwater. There is accordingly no substantial ground for difference of opinion on the issue presented in the Water Agencies' petition and no need for immediate resolution of the question. Far from materially advancing the ultimate termination of the litigation, therefore, piecemeal appeal in this case would merely prolong the litigation and postpone the ultimate resolution of the Tribe's claims.

## I. Background

### A.     The *Winters* doctrine and federal reserved water rights

In *Winters v. United States*, 207 U.S. 564 (1908), the Supreme Court held that Congress impliedly reserved unappropriated water sufficient to effectuate its purposes when it withdrew land for an Indian reservation. Such reserved waters are exempt from appropriation under state law.[1] *Winters*, 207 U.S. at 577. See also, *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 574 (1983) ("Vested no later than the date each reservation was created, these Indian rights are superior in right to all subsequent appropriations under state law.") Under the "*Winters* doctrine," the right to use water sufficient to accomplish the federal

---

[1] The use of water on unreserved federal lands in most of the western states is subject to state law based on the "prior appropriation doctrine," under which water rights are acquired by diverting water and applying it for a beneficial purpose. See, *California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142 (1935)).

purpose for which land is reserved extends to federal land reservations generally, including Indian reservations created by executive order and non-Indian federal reservations. *Nevada v. United States*, 463 U.S. 110, 116 n.1 (1983); *Cappaert v. United States*, 426 U.S. 128, 143-146 (1976); *Arizona v. California*, 373 U.S. 546, 597-598 (1963). Because such federal reserved water rights are exempt from appropriation under state law, they are not based on actual beneficial use and are not forfeited if they are not used.

### B.    The Agua Caliente Reservation

The Tribe and its ancestors have occupied and used lands in the Coachella Valley since time immemorial. On May 15, 1876, President Grant issued an executive order specifically identifying lands for the "Agua Caliente," among other Mission Indian lands, to "be, and the same hereby are, withdrawn from sale and set apart as reservations for the permanent use and occupancy of the Mission Indians in Southern California." Kappler, Indian Affairs: Laws and Treaties, vol. 1, 821. On September 29, 1877, President Hayes issued a second executive order identifying specific additional sections of land adjacent to the 1876 withdrawal to be "withdrawn from sale and settlement, and set apart as a reservation for Indian purposes for certain of the Mission Indians." Kappler, *Indian Affairs: Laws and Treaties*, vol. 1, 822. Since before the reservation was established, the Tribe has used water on its arid lands for agricultural, stock-watering, and other purposes

5

(Doc. 97-2, p.39). Federal officials observed at the time the land was reserved that water was scarce but could be developed from underground sources. *Id.*

### C.     The proceedings in the district court

In the district court, the parties stipulated to a trifurcated process for adjudicating the claims, in which the questions whether groundwater may be included in a federal reservation of water rights and whether the Tribe has a reserved right in groundwater were addressed in the first phase. The second and third phases will address the scope of the groundwater right and quantification of the right, respectively. Accordingly, questions as to the scope and quantity of the Tribe's reserved groundwater rights are not relevant to Phase I.

All parties filed motions for summary judgment in Phase I, and the Order at issue here reflects the district court's disposition of those motions. As relevant here, the district court held that the Tribe's reservation includes federal reserved water rights in groundwater underlying its lands.

## II.  Argument

### A.     Federal reserved water rights are governed by federal, not state, law.

The *Winters* doctrine establishes a federal reserved water right to effectuate the purposes for which land is reserved. An Indian reserved water right therefore does not depend on the manner in which the state administers water rights, but rather exists as a matter of federal law to the extent that water is needed to

accomplish federal reservation purposes. It is well settled that the reservation of
land for Indians is for the purpose of providing a homeland, a purpose for which
water is necessary. *Winters*, 207 U.S. at 577 (1908); see also, *Colville
Confederated Tribes v. Walton*, 647 F.2d 42, 46–47 (9th Cir. 1981) (water rights
are reserved for specific reservation purposes identified through consideration of
multiple factors, including document creating reservation, circumstances
surrounding creation, history of tribe, and need of tribe to maintain itself under
changed circumstances).

The Water Agencies mischaracterize the *Winters* doctrine by reciting (Pet.
13) that the United States has reserved a water right where such a *right* is necessary
to achieve the "primary" purposes for which land is reserved, rather than where
*water* is necessary to achieve those purposes. On this incorrect premise, the Water
Agencies contend that where the state system of administration would provide the
Tribe with a water right, no federal reserved right is necessary to effectuate the
purposes for which its lands were reserved, and therefore no water right is
reserved.

The district court correctly rejected this theory, which is contrary to
controlling legal authority, see *e.g., Cappaert v. United States,* 426 U.S. at 138-39.
Based on their distorted reading of the *Winters* doctrine, the Water Agencies
inaccurately suggest (Pet. 14) that the Supreme Court's decision in *United States v.*

7

*New Mexico*, 438 U.S. 696 (1978), which addresses the scope and quantity of a federal reserved water right for National Forest purposes, supports the proposition that state law can defeat entirely the reservation of water rights for an Indian reservation. That is incorrect.

Under well-settled authorities in this Court and the Supreme Court, when the United States reserves lands for Indians, a reserved right to use water sufficient to accomplish the purpose of the reservation is created. The Tribe's reservation was intended as a permanent homeland in an arid landscape and therefore requires water to accomplish its purpose. See, *e.g. Colville Confederated Tribes v. Walton*, 647 F.2d at 46. *New Mexico*, which addresses limitations on the scope and quantity of a federal reserved water right for National Forest purposes, thus has no bearing on whether a reserved water right *exists,* as the district court correctly concluded, and instead is relevant, if at all, to the last phase of this litigation.

Indeed, this Court has rejected *any* direct application of *New Mexico* to Indian reservations. *United States v. Adair*, 723 F.2d 1394, 1409 (9th Cir. 1983). "While the purpose for which the federal government reserves other types of lands may be strictly construed [citing *New Mexico*], the purposes of Indian reservations are necessarily entitled to broader interpretation if the goal of Indian self-sufficiency is to be attained." *Id.,* n.13, quoting W. Canby, American Indian Law 245–46 (1981). See also, *John v. United States,* 720 F.3d 1214, 1225 (9th Cir.

8

2013) (discussing *New Mexico* in the context of "how the federal reserved water rights doctrine works outside the context of an Indian reservation.") *New Mexico* accordingly does not provide a substantial ground for difference of opinion regarding the existence of the Tribe's reserved water rights.

### B. Binding precedent in this Court holds that appurtenant groundwater necessary to a federal reservation of land is impliedly reserved

In *United States v. Cappaert*, 508 F.2d 313 (9th Cir. 1974), this Court held that "the United States may reserve not only surface water, but also underground water," *Cappaert*, 508 F.2d at 317, aff'd on other grounds, 426 U.S. 128. The issue in *Cappaert*, like the question here, was whether pumping of groundwater can interfere with a federal reserved water right. In *Cappaert,* the United States sued to enjoin groundwater pumping in the vicinity of Death Valley National Monument. The Monument is a federal reservation that includes a deep limestone cavern known as Devil's Hole, which contains a pool of water that this Court found was "part of the 4,500 square mile groundwater system." 508 F.2d at 316. Cappaert, the owner of a ranch located two and one-half miles away, pumped groundwater from the same system. The pumping decreased the water level in the pool, such that it no longer supported a protected species of fish, the preservation of which was among the purposes of the reservation. Cappaert admitted pumping from the underlying

9

aquifer that fed the pool in Devil's Hole, but denied that the United States had a claim to groundwater.

This Court rejected Cappaert's assertion that the government's reserved water right was limited to surface water. It held that although *Winters* and subsequent Supreme Court decisions extending the doctrine "involved only surface water rights, the reservation of water doctrine is not so limited" and enjoined pumping to the extent that it interfered with the United States' reserved water right. *Cappaert*, 508 F.2d at 317.

In affirming this Court's judgment in *Cappaert*, the Supreme Court characterized the water in Devil's Hole as surface water, but found that the "groundwater and surface water are physically interrelated as integral parts of the hydrologic cycle." *Cappaert v. United States*, 426 U.S. at 142. The Supreme Court affirmed this Court's judgment enjoining the pumping of groundwater, holding that "since the implied-reservation-of-water-rights doctrine is based on the necessity of water for the purpose of the federal reservation, we hold that the United States can protect its water from subsequent diversion, whether the diversion is of surface or groundwater." *Id.* at 143.

Although the Supreme Court did not expressly affirm this Court's holding that the federal reserved water rights doctrine generally extends to groundwater, this Court's decision remains binding precedent in this Circuit. As this Court

reiterated in *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 875 (9th Cir. 2014), "it is well settled that we are bound by our prior decisions, [except] where 'the relevant court of last resort [has] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable'" (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (*en banc*)) see also, *Mastro v. Rigby*, 764 F.3d 1090, 1094-95 (9th Cir. 2014) (same). Nothing in the Supreme Court's approach to the issue presented in *Cappaert* undercuts this Court's holding that the reserved water rights doctrine extends to groundwater.[2] Accordingly, this Court has previously settled the issue presented in the petition, and no ground for disagreement warranting interlocutory appeal exists, much less a "substantial ground."

---

[2] The Water Agencies inaccurately suggest that it is "undisputed" that "the groundwater at issue is not hydrologically connected to the reservation's surface water." Although the district court made this statement in its order (Order at 14), it is incorrect and appears to reflect a misunderstanding of statements concerning the nature of the connection in materials submitted by the Tribe. In any event, the district court correctly held that groundwater is appurtenant to the reservation; and it is the need for water, and not the hydrological connection between surface and groundwater, that determines whether a water right is reserved. *Cappaert*, 426 U.S. at 143.

**C.** **There is no substantial conflict among the courts as to whether federal reserved water rights extend to groundwater**

1. *Federal courts uniformly recognize that federal reserved water rights include the right to use groundwater*

The other federal courts that have addressed the question similarly have concluded that federal reserved water rights include rights to use groundwater. In *Cappaert*, this Court cited two prior federal-court decisions applying the doctrine to groundwater, *Nevada ex rel. Shamberger v. United States*, 165 F.Supp. 600 (D. Nev. 1958), aff'd on other grounds, 279 F.2d 699 (9th Cir. 1960), and *Tweedy v. Texas Co.*, 286 F. Supp. 383, 385 (D. Mont. 1968). *Shamberger* held that the right to develop groundwater within a federal reservation is not subject to state law. 165 F. Supp. at 608. In *Tweedy,* the federal district court for Montana held that the establishment of a reservation reserved underground waters to the same extent, and with the same limitations, as surface waters: "The *Winters* case dealt only with the surface water, but the same implications which led the Supreme Court to hold that surface waters had been reserved would apply to underground waters as well. The land was arid — water would make it more useful, and whether the waters were found on the surface of the land or under it should make no difference." *Tweedy*, 286 F. Supp. at 385.

Likewise, since this Court's decision in *Cappaert,* federal courts in this Circuit and elsewhere consistently have held that federal reserved rights include

groundwater rights. *Colville Confederated Tribes v. Walton*, 460 F. Supp. 1320, 1326 (E.D. Wash. 1978) ("[*Winters* rights] extend to groundwater as well as surface water"), aff'd in part on other grounds, and rev'd in part on other grounds, 647 F.2d 42 (9th Cir. 1981); *State of New Mexico ex. rel. Reynolds v. Aamodt*, 618 F. Supp. 993, 1010 (D.N.M. 1985) (Pueblo water rights extend to groundwater as an integral part of the hydrologic cycle); *Gila River Pima-Maricopa Indian Community v. United States*, 9 Ct. Cl. 660, 699 (1986) ("[t]he Winters doctrine . . . includes an obligation to preserve all water sources within the reservation, including groundwater"); *Soboba Band of Mission Indians v. United States*, 37 Ind. Cl. Comm. 326, 341 (1976) ("the Winters Doctrine applies to all waters appurtenant to the reservations, including wells, springs, streams, and percolating and channelized ground waters"). The Water Agencies have cited no federal-court decision to the contrary. Accordingly, we are aware of no substantial ground for difference of opinion based on reported federal authority either within or outside this Circuit.

### 2. *The state courts generally recognize that groundwater is reserved where it is necessary to effectuate a federal reservation of land.*

The district court *sua sponte* certified its order for immediate appeal pursuant to 28 U.S.C. 1292(b) finding a substantial ground for difference of opinion because "state supreme courts are split on the issue and no federal court of

appeals has passed on it." As discussed above, however, this Court ruled on the question in *Cappaert*, and this Court and the district court accordingly are bound by the decision in that case. Moreover, because the existence and scope of federal reserved water rights are governed by federal law, see *e.g. Colville Confederated Tribes v. Walton*, 752 F.2d 397, 400 (9th Cir. 1985), and the federal court decisions are in agreement on the issue, it is by no means clear that the existence of a split among state supreme courts could give rise to a "substantial ground for difference of opinion," even if this Court had not ruled on the issue.

And in any event, even if state courts' interpretation of federal law could outweigh the federal courts' uniform conclusion that federal reserved rights exist in groundwater, the "split" among the states that have addressed the question does not amount to a "substantial ground for difference of opinion" on the issue. With a single exception, state supreme courts that have addressed the question have concluded that the *Winters* doctrine applies to groundwater. The only state supreme court to rule to the contrary nonetheless expressly endorsed the rationale of the state courts that have held that federal reserved rights exist in groundwater. Since that court's ruling, the state supreme courts that have addressed the question, like the federal courts, have consistently held that rights in groundwater may be federally reserved.

In *In re All Rights to Use Water in the Big Horn River System*, 753 P.2d 76 (Wyo. 1988) ("*Big Horn*"), the Wyoming Supreme Court acknowledged that "[t]he logic which supports a reservation of surface water to fulfill the purpose of the reservation also supports reservation of groundwater." 753 P.2d at 100. It declined to reverse a lower court decision concluding that groundwater was not reserved, however, on the ground that "not a single case applying the reserved water doctrine to groundwater is cited to us." *Id.*

The Water Agencies inaccurately assert (Pet. 17) that the U.S. Supreme Court affirmed the Wyoming court's holding that the *Winters* doctrine does not extend to groundwater, and contend (*id.*) that substantial grounds exist for difference of opinion because the Supreme Court "is equally divided on this question." But the Supreme Court did not even consider the groundwater question. Although the *Big Horn* decision was affirmed by an equally divided Supreme Court, that Court granted *certiorari* "limited to Question 2," 488 U.S. 1040 (1989), and considered only the scope and quantity of an Indian reservation's federal reserved water rights.[3] The groundwater issue was not presented, and the

---

[3] The question on which the Court granted *certiorari* was "In the absence of any demonstrated necessity for additional water to fulfill reservation purposes and in the presence of substantial state water rights long in use on the Reservation, may a reserved water right be implied for all practicably irrigable lands within a Reservation set aside for a specific tribe?" See petition in *Wyoming v. U.S.,* S. Ct. No. 88-309, 1988 WL 1094117 at *i.

Supreme Court's affirmance of the decision in *Big Horn* accordingly is irrelevant to whether a substantial ground for difference of opinion exists regarding federal reserved water rights in groundwater.

The Arizona Supreme Court expressly declined to follow the Wyoming Supreme Court's equivocal decision in *Big Horn,* and held that groundwater may be reserved for the benefit of Indian reservations under the *Winters* Doctrine. In *In re General Adjudication of All Rights to Use Water in the Gila River System and Source*, 989 P.2d 739 (Ariz. 1999), the Arizona court, relied on the logic of *Winters* in holding that when the United States establishes Indian reservations on arid land, it likewise intends a "reservation of water to come from whatever particular sources each reservation had at hand." *Id*. at 746-47. The Arizona Supreme Court observed that "[w]e can appreciate the hesitation of the *Big Horn* court to break new ground, but we do not find its reasoning persuasive. That no previous court has come to grips with an issue does not relieve a present court, fairly confronted with the issue, of the obligation to do so. Moreover, as the *Big Horn* court acknowledged, we do not write on a blank slate."

The Arizona Supreme Court found instructive that the U.S. Supreme Court in *Cappaert* concluded that a groundwater diversion may be enjoined to protect federally reserved waters: "That federal reserved rights law declines to differentiate surface and groundwater . . . when addressing the diversion of

protected waters suggests that federal reserved rights law would similarly decline to differentiate surface and groundwater when identifying the water to be protected." *Id.* at 747 (citing *Cappaert*, 426 U.S. at 142-43). Using *Winters* and *Cappaert* as "guideposts," the Arizona Court concluded that "[t]he significant question for the purpose of the reserved rights doctrine is not whether the water runs above or below the ground but whether it is necessary to accomplish the purpose of the reservation." *Id.* at 747.

Similarly, in *Confederated Salish and Kootenai Tribes of the Flathead Reservation v. Stults*, 59 P.3d 1093, 1098-99 (Mont. 2002), the Montana Supreme Court held that the treaty establishing the Flathead Indian Reservation implicitly reserved groundwater underlying the reservation. Relying on the reasoning of the Arizona Supreme Court, as well as this Court's and the Supreme Court's decisions in *Cappaert*, the Montana Court found "no distinction between surface water and groundwater for purposes of determining what water rights are reserved because those rights are necessary to the purpose of an Indian reservation," *id.* at 1098, and concluded that there was "no reason to limit the scope of our prior holdings by excluding groundwater from the Tribes' federally reserved water rights." *Id.* at 1099.

### 3. *The State of California recognizes federally reserved water rights in groundwater*

The California State Legislature recently confirmed the State's acknowledgment that federal reserved rights exist in groundwater. The Sustainable Groundwater Management Act of 2014 (California Water Code, Division 6, Part 2.74, Chapter 1, § 10720.3(d)), which became effective on January 1, 2015, provides that

> [i]n an adjudication of rights to the use of groundwater, and in the management of a groundwater basin or subbasin by a groundwater sustainability agency or by the board, *federally reserved water rights to groundwater shall be respected in full. In case of conflict between federal and state law in that adjudication or management, federal law shall prevail*. The voluntary or involuntary participation of a holder of rights in that adjudication or management shall not subject that holder to state law regarding other proceedings or matters not authorized by federal law. *This subdivision is declaratory of existing law.*

(Emphasis supplied).

Contrary to the Water Agencies' contentions (Pet. 14-17), therefore, no state or federal authority presents a substantial ground for difference of opinion regarding the existence of a federal reserved water right in the circumstances presented here. And, because the district court's decision is consistent with settled law on the issue presented in the petition, there is no likelihood that an appeal to this Court could materially advance the ultimate termination of the litigation. In the absence of a substantial ground for difference of opinion the immediate resolution of which would materially advance the ultimate termination of this litigation, the

18

Water Agencies have not established that the district court correctly certified that its order meets the requirements of 28 U.S.C. 1292(b). Accordingly, the Water Agencies have failed to demonstrate that an exception to the final judgment rule applies here. This Court therefore lacks jurisdiction to entertain an appeal from the district court's interlocutory order and may not grant the Water Agencies' petition.

## CONCLUSION

The petition for permission to appeal should be denied.

Respectfully submitted,

Of Counsel:

WILLIAM B. LAZARUS
JOHN L. SMELTZER
SCOTT BERGSTROM
PATRICK BARRY
CHRISTOPHER WATSON
DARON T. CARREIRO
Office of the Solicitor
YOSEF M. NEGOSE
U.S. Department of the Interior
ELIZABETH ANN PETERSON
Washington, D.C. 20240
Attorneys
U.S. Department of Justice
P.O. Box 7415
Washington, D.C. 20044
(202) 514-3888

APRIL 2015
90-6-2-01078

19

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2015, I electronically filed the foregoing Answering Brief with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in this appeal are registered CM/ECF users and will be served by the appellate CM/ECF system.

*s/Elizabeth Ann Peterson*